UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| PATSY OHEA COPELAND, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:12-CV-142 BL |
| § | ECF |
| § | |
| CAROLYN W. COLVIN,[1] § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | Assigned to U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION**

**THIS CASE** is before the court upon Plaintiff's complaint filed August 2, 2012, seeking judicial review of the administrative decision of the Commissioner of Social Security which denied Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on July 13, 2012 (Doc. 22). Defendant filed a brief on November 13, 2012 (Doc. 19). Defendant filed a Response on December 7, 2012 (Doc. 20). Plaintiff filed her Reply on December 22, 2012.

Plaintiff indicated her refusal of consent to proceed before the United States Magistrate Judge on September 11, 2012. This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge affirm the Commissioner's decision and dismiss Plaintiff's Complaint.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security, effective February 14, 2013, and is therefore substituted as Defendant in this matter for Michael J. Astrue, per FED. R. CIV. P. 25(d)(1).

## I.  STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on November 16, 2009, alleging disability beginning October 14, 2009. Tr. 130-32. Tr. 37. Plaintiff's application was denied initially and upon reconsideration. Tr. 60-65, 67-72.  Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") on September 13, 2010, and this case came for hearing before the ALJ on March 23, 2011.  Tr. 23-55, 73.  Plaintiff, represented by an attorney, appeared and testified in her own behalf.  Tr. 27-49. A vocational expert ("VE") appeared and provided expert testimony. Tr. 49-53.  The ALJ issued an opinion that was unfavorable to Plaintiff on May 16, 2011.  Tr. 12-32.

In his opinion, the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  Tr. 13.  The ALJ found no just cause to reopen Plaintiff's prior set of concurrent disability applications, filed in October 2007. *Id*.  The ALJ found that Plaintiff met the disability insured status requirements of the Act on the alleged onset date through the date of his decision.  Tr. 20 The ALJ found that Plaintiff had not engaged in substantial gainful activity at time relevant to the decision.  *Id*.  The ALJ found that Plaintiff has a "severe" combination of impairments, including hypertension with chest pain; degenerative disc disease in the cervical and lumbar spines; degenerative joint disease in the hips; and a history of a small effusion on the right knee.  *Id*.  The ALJ found no evidence of a mental impairment that led to any restrictions in Plaintiff's activities of daily living; ability to maintain social functioning; or concentration, persistence, or pace.  *Id*.  The ALJ also found that Plaintiff's mental impairment(s)

caused no episodes of decompensation of extended duration. Tr. 20. The ALJ thus found that Plaintiff's alleged mental impairment was not "severe." Tr. 21.[2]

The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, Tr. 15. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p"). Tr. 16-18. The ALJ noted Plaintiff's allegations regarding her symptoms and the limitations imposed therein. Tr. 15-16. The ALJ described the medical evidence of record as to Plaintiff's impairments. Tr. 16-17. The ALJ noted that Plaintiff was twice examined by Dr. Trifilo, who indicated that her subjective complaints of pain did not correct with physical findings. *Id*. Dr. Hudman's progress and treating notes and records were also addressed. *Id*.

The ALJ discussed Plaintiff's reports of her medical treatment and her activities of daily living and compared them with the objective medical evidence of record. Tr. 17-18. The ALJ also noted Plaintiff's claims regarding mental impairment(s), and compared her subjective reports of

---

[2]The ALJ evaluated Plaintiff's mental impairment(s) under the part B and part C criteria described in 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00 of the Listing of impairments, finding that such impairment(s) caused Plaintiff no functional restrictions and no episodes of decompensation of extended duration. Tr. 21. The ALJ found that Plaintiff's mental impairment(s), neither singularly or in combination, did not have a more than minimal affect on her ability to perform basic work-related mental activities, citing *Stone v. Heckler*, 752 F.2d 1099 (5th cir. 1985), and were thus not "severe." *Id*.

symptoms with the lack of treatment received therein.  Tr. 18-19.

The ALJ found that Plaintiff has underlying medically determinable impairments which are capable of producing the type of symptoms alleged. Tr. 14-15.   The ALJ found, by implication, that her subjective complaints are exaggerated.  Tr., 18.  The ALJ indicated that he had considered Plaintiff's activities of daily living, treatment, medication side effects, lack of lifestyle changes, palliative measures utilized, the medical evidence of record, and the reports of examining physicians in making his credibility determination. Tr. 15-16, 17-19.  The ALJ noted that Dr. Trifilo had opined twice, upon physical examination, that Plaintiff's subjective complaints of pain were out of proportion to objective medical findings. The ALJ also specifically noted Plaintiff's reports of caring for her personal needs, performing housework at times, shopping, handling her finances, daily telephone and other contact with family and a friend. Tr. 15-18.   The ALJ also generally found the opinions of the non-examining State agency physicians credible and well-supported by the evidence. Tr. 18.

The ALJ found that Plaintiff retained the residual functional capacity to perform the physical and nonexertional requirements of a range of light work, except that she cannot stand or walk more than 15 minutes at any one time; she cannot  climb ladders, scaffolds, or ropes; she can only occasionally climb, balance, stoop, kneel, crouch, and crawl.  Tr. 18.  In making his RFC finding, the ALJ described the weight given to the opinions of the treatment providers, the consulting examiners, the State agency medical consultants, and to the subjective allegations and testimony of the Plaintiff.  Tr. 16-19.

The ALJ found that Plaintiff retained the RFC to perform her past relevant work as a home health aide, as she had performed that job (i.e., at the light, rather than medium, exertional level). Tr. 20.  The ALJ relied upon the testimony of the vocational expert.  *Id*. The ALJ, therefore,

concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 20-21.

Plaintiff sought review of the hearing decision and order. Tr. 9. The Appeals Council issued an opinion denying review of the ALJ's hearing decision. Tr. 1-5. The ALJ's decision, therefore, became the final decision of the Commissioner. On August 2, 2012, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled. (Doc. 2).

## II.  STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial

gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because she retained the ability to perform her past relevant work. Tr. 20-21.

### III.  DISCUSSION

Plaintiff claims that the ALJ erred in finding that her past work as a home health aide constituted past relevant work because it was never performed at the substantial gainful activity level. Plaintiff also argues that the ALJ erred in relying upon the testimony of the VE to find that Plaintiff could perform the job of home health aide as the light exertional level. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.  Whether the ALJ erred in finding that Plaintiff's previous work as a home health aide constituted past relevant work.**

Plaintiff argues that the ALJ erred finding that her work as a home health aide was past relevant work as defined in application regulations because it was not performed at the level of substantial gainful activity.

Past relevant work is defined as work that the claimant has done in the past 15 years that was substantial gainful activity, of such duration that the claimant has learned how to perform the job. 20 C.F.R. §§ 416.960(b)(1), 416.965(b), 414.1565(a). "Substantial gainful activity is work that is both substantial and gainful," and can include work that is done on a part-time basis, work that is

done less, or work that is paid less, when such work activity is done for pay or profit. 20 C.F.R. § 404.1572.

The parties agree that Plaintiff's earnings for her home health aide job and other jobs were below the earnings guidelines describing substantial gainful activity. However, applicable regulations demonstrate that work which does not result in such earnings may constitute substantial gainful activity, when such work activity is generally done for pay or profit, and was, indeed, done for pay or profit. *See generally, Squires v. SSA, Comm'r,* 441 Fed. Appx. 659, 660 (11th Cir. 2011)(unpublished); *Thibodaux v. Astrue*, 2012 U.S Dist. LEXIS 41519, *24 (E.D. La. March 8, 2012)(unpublished), *approved by, objective overruled, and adopted by Thibdaux v.* Astrue, 2012 U.S. Dist. LEXIS 41515 (E.D. La. March 27, 2012)(unpublished). This is consistent with the testimony of the VE, who indicated that the work Plaintiff performed as a home health aide was the only job performed which may have constituted substantial gainful activity and past relevant work.

The court finds that the ALJ did not err in finding that Plaintiff's previous work as a home health aide constituted past relevant work.

**B.    Whether the ALJ erred in relying upon the testimony of the VE, who indicated that Plaintiff's past relevant work was performed at the light exertional level.**

Plaintiff argues that the ALJ erred insofar as the job of home health attendant is generally performed at the medium exertional level as described by the *Dictionary of Occupation Titles* ("DOT"),[3] and did not adequately develop the record to determine whether Plaintiff had ever performed such work exclusively as the light exertional level.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*,

---

[3]    *See* United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT").

805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills. *See* Soc. Sec. Ruling 00-4p (December 4, 2000) ("SSR 00-4p"). This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.* Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* SSR 00-4p notes that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." This ruling also requires the ALJ to ask about any possible conflicts between the testimony of the VE and the information provided in the DOT. *Id.*

The Social Security Administration has taken "administrative notice" of the DOT. *See* 20 C.F.R. § 416.966(d)(1). However, the Fifth Circuit has recognized that "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields*, 805 F.2d at 1171).

Plaintiff argues that the testimony of the VE conflicted with the DOT, that the ALJ failed to elicit testimony from the VE resolving such conflict, and that, as a result, the record was not

adequately developed to determine whether Plaintiff could perform her past relevant work as a home health aide as she previously performed it.

In *Carey* the Fifth Circuit addressed a case in which the claimant argued that the testimony of the VE, upon which the ALJ relied, conflicted with the *Dictionary of Occupational Titles*. 230 F.3d at 146. The Court again noted that "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed," and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id*. at 145; see *Fields*, 805 F.2d at 1170. The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so.

In this case the VE testified that Plaintiff's primary work of the previous 15 years was that of home health attendant, which is classified as a medium job, semi-skilled, with a vocational preparation level of 3. Tr. 50. The VE testified that Plaintiff indicated that her job as home health aide, as performed, involved lifting 10 pounds. *Id*. The VE was questioned by Plaintiff's counsel and indicated that although such work is generally described by the DOT as medium level work, "there are home health providers that work more with the ambulatory patients, and they're not having to help transfer the patient," thus resulting in work at the light exertional level. Tr. 52. Plaintiff indicated that during the time she worked for Outreach Home Health she did not lift or carry anything, and the heaviest weight lifted was less than 10 pounds. Tr. 143.

The VE testified that the Plaintiff's past relevant work as a home health aide could be performed with the limitations included in the RFC assessment. In testifying, the VE appropriately

used her special expertise "to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. SSR 00-4p specifically notes that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and further indicates that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." The record as a whole provides an adequate basis for the ALJ to rely upon the testimony of the VE, and in so doing, the ALJ did not commit reversible error. Moreover, the record contains sufficient evidence to the determination of how the Plaintiff performed her work – at a light exertional level.

The court finds that the ALJ did not err by relying upon the testimony of the VE, that there was no overt conflict between the testimony of the VE and the DOT, and that the determination of the ALJ at step 4 of the sequential evaluation process, that Plaintiff was not disabled because she retained the ability to perform her past relevant work, is supported by substantial evidence in the record. The court finds that the ALJ did not err in finding that Plaintiff's the residual functional capacity to perform her past relevant work, and the ALJ decision is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

Plaintiff having refused consent to having the United States magistrate judge conduct all further proceedings in this matter, this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

**SO ORDERED**.

DATED this 24th day of April 2013.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**